# Staunton

HATTIE JOHNSTON CARTER, ET ALS. V. THE TOWN OF PEARISBURG.

September 13, 1939.

Record No. 2124.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning, and Eggleston, JJ.

The opinion states the case.

*Martin, Abbott & Martin* and *Martin & Wilkinson,* for the appellants.

*J. L. Dillow,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Since 1909 the town of Pearisburg has been obtaining a portion of its water supply from certain springs at the foot of Angels' Rest Mountain, in Giles county, located on the lands owned by the heirs of the late James D. Johnston, Sr. With the permission of the Johnston heirs the water was collected in a concrete reservoir and piped across their lands to the town.

Some time between 1932 and 1934 the Johnston heirs began negotiations with the town officials with a view to inducing the latter to purchase the springs and their watershed. The town was unwilling to pay the price asked by the property owners, and finally, on November 2, 1936, Colonel James D. Johnston, on behalf of himself and the other heirs, notified the town officials that thereafter the town might no longer use the water and the pipe line across their lands free of charge, and that beginning on that date the property owners would make a rental charge of $50 per month for such use. Subsequently bills for the rental on this basis were submitted by the property owners and payment was refused by the town.

On September 4, 1937, the Johnston heirs brought an action of unlawful detainer against the town to recover possession of the springs and the strip of land occupied by the town's pipes. Shortly thereafter the town filed a bill in equity against the heirs alleging that it had acquired, either by gift from the Johnston heirs, or by prescription, or by estoppel, the perpetual right to use the water from the springs and to maintain its pipes across the Johnston lands. The prayer of the bill was that the Johnston heirs be enjoined from prosecuting their action of unlawful detainer against the town or otherwise interfering with its use of the water and the pipes across the lands in question.

The Johnston heirs filed a cross-bill in which they denied that the town had other than a permissive right to use the water and to pipe it across their lands, and alleged that such use was revocable at the pleasure of the heirs and had been revoked by them on November 2, 1936. Accordingly, they prayed that the town be enjoined from further using the water from the springs and from piping it across their property, and that a judgment be entered in their favor against the town for the rental of the water rights and right of way for the pipes across their lands, at the rate of $50 per month from November 2, 1936, until paid.

Upon submission of the depositions taken on behalf of the parties the court decreed that the town had acquired a mere permissive right to use the water and to pipe it across the Johnston lands, revocable at the will of the Johnston heirs, and that such use and right of way had been revoked and terminated on November 2, 1936. Hence, the town was perpetually enjoined from further using the water and from maintaining its pipes across the Johnston lands. But the prayer of the Johnston heirs for a judgment for rent for use of the water and their lands was denied.

The Johnston heirs have appealed from so much of the decree as disallowed their claim for rent. No appeal has been taken by the town from that portion of the decree which adversely disposed of its claim to a perpetual right to use the water and the right of way for its pipes. Neither

is there any cross-assignment of error to the lower court's decision as to this. Consequently the only question before us is whether the Johnston heirs are entitled to the rental claim asserted by them and disallowed by the lower court.

In its written opinion the lower court gives the following reason for disallowance of the rent claim: "The town has continued to use the water since the demand was made on it for rent in November, 1936, presumably upon the belief of those then in authority that the town owned the water or had a permanent right to use it. Its council would hardly have been warranted in using the funds of the town, gathered as taxes from its citizens, to pay the rent demanded until it was judicially determined that its license was ended. It would not be equitable, under the circumstances of this case, to require payment of rent until the rights of the parties have been ascertained and the power of the defendants to revoke has been authoritatively established."

With this reasoning we can not agree. The town, of course, had the right to withhold payment of the claim pending the adjudication of its liability therefor. But when it had been judicially determined that the town's right to use the water and lands terminated on November 2, 1936, it necessarily followed that the owners of the property were entitled to a fair rental for such use after that date. To hold otherwise would amount to depriving these owners of their property without due process of law and appropriating it to public use without just compensation in violation of their constitutional rights. (Constitution of Virginia, sections 11, 6.)

At the trial below no question was raised as to the amount of the charge. On behalf of the owners of the property Colonel James D. Johnston testified that, in his opinion, $50 per month would be a fair and reasonable charge for use of the water and the right of way for the pipes; that he had arrived at this figure "from reliable sources" as well as from the admitted fact that the town derived an average monthly income of $188.75 from the distribution of water to its customers; and that on November 2, 1936, he had noti-

fied the town authorities that this was the price which the owners demanded and expected for the use of the water rights and the land.

The town made no objection to this testimony, nor did it offer any evidence as to what would be a reasonable charge. Under such circumstances we think that the evidence is sufficient to sustain the reasonableness of the monthly rental charge of $50.

Despite the fact that the town did not contest in the court below the reasonableness of this charge, it now contends that such claim is entirely out of proportion to the amount at which the town acquired the water and the right of way over appellants' land in condemnation proceedings which were instituted after the lower court had decided the principal question involved adversely to the town's contention. To sustain this position we are asked to go outside of the record in the instant case and examine the record in the subsequent condemnation proceedings.

In determining whether the evidence is sufficient to sustain the appellants' claim to a monthly rental of $50 for the use of their property, the parties are, of course, bound by the record in the instant case. The appellee can not supply its lack of evidence as to such rental value by referring to the record in the subsequent condemnation proceedings.

Our conclusion is that the appellants are entitled to recover of the appellee rental for the use of their property from the date of the revocation of the permissive use thereof, November 2, 1936, to the date when it is admitted that the appellee acquired title to such property by condemnation, April 29, 1938, at the rate of $50 per month, with interest and costs. A final decree to that effect will be entered here.

*Modified and affirmed.*